Filed 12/2/21  P. v. Webb CA3

## NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>JACK KENNETH WEBB,<br><br>Defendant and Appellant. | C089213<br><br>(Super. Ct. No. STKCRCNV20000014533) |

On October 15, 2002, a jury found defendant Jack Kenneth Webb guilty of first degree murder (Pen. Code, § 187, subd. (a))[1] and robbery (§ 211).  The jury further found true the enhancement allegation that the murder had been committed during the commission of a robbery (§ 190.2, subd. (a)(17)(A)), but found not true the allegation that defendant had personally discharged a firearm causing great bodily injury

---

[1]     Undesignated statutory references are to the Penal Code.

(§ 12022.53, subd. (d)).  The trial court sentenced defendant to five years for the robbery plus an indeterminate term of life without the possibility of parole.  We affirmed defendant's convictions and the special allegation finding in an unpublished decision issued June 29, 2005.[2]  (*People v. Webb* (June 29, 2005, C043001) [nonpub. opn.] (*Webb*).)

Defendant petitioned the trial court for resentencing based on changes to the felony-murder rule under recently enacted Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437).  (Stats. 2018, ch. 1015, § 4, eff. Jan. 1, 2019.)  The trial court summarily denied his petition before appointing him counsel after finding defendant could not make a prima facie showing for resentencing, given the jury's true finding on the robbery-murder special circumstance under section 190.2, subdivision (a)(17)(A).  The court reasoned that in finding the special circumstance true, the jury found that defendant committed acts consistent with the changes brought about by Senate Bill 1437.

On appeal, defendant argues that because his petition complied with the statutory requirements, he was entitled to appointment of counsel and a hearing on the merits of his petition before the trial court's denial.  He further argues that even if the record of conviction could be properly considered in the trial court's prima facie determination, the jury's true finding on the robbery-murder special circumstance cannot preclude his petition relief because that finding predated the California Supreme Court's decisions in *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*).  In accordance with the Supreme Court's recent decision in *People v. Lewis* (2021) 11 Cal.5th 952 (*Lewis*), we conclude the trial court erred in summarily denying defendant's petition without the benefit of the appointment of counsel and briefing.

---

**2**      We granted defendant's request to incorporate by reference the record from his prior appeal, thus mooting the People's request that this court take judicial notice of those records.

However, we find any error was harmless under the circumstances of this case, and accordingly, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

A. *The Underlying Robbery-Murder*

We take the facts from the unpublished opinion we issued in 2005 affirming defendant's convictions in *Webb*:

"On June 16, 2000, stipulated in the trial court to be the day of the full moon, defendant's landlady served him with a three-day notice for nonpayment of rent.

"The next day, defendant, Jacqueline Brooks, William 'Billy' Nelson, April Aguilar, and Jason 'Bugsy' Palmer were at defendant's San Jose apartment using drugs. Nelson, the only testifying eyewitness, was a homeless drug addict and dealer who used LSD, marijuana and methamphetamines. He had been using methamphetamines since he was 11, and since about 1998 preferred to inject it. He had convictions for criminal threats, domestic violence and possession of marijuana. He knew defendant and Palmer from drugs 'and living on the streets.'

"Stephen Miranda had told his roommate he wanted to buy a van. He withdrew $4,000 from his bank that morning and sought a ride to San Francisco from defendant; defendant told him cars were cheaper in the valley.

"Defendant, Miranda and Aguilar left in a van and returned with a rented Toyota Corolla, for which defendant signed the rental agreement, but for which Miranda paid the rental fee in cash. With defendant driving, he, Miranda, Nelson and Palmer went to San Francisco to look at vans. During the trip they used methamphetamine. They drove back to San Jose, then to Stockton, where they went to various places and used more drugs. At some point on the way back to San Jose, Nelson blacked out from overconsumption.

"Eventually, defendant stopped on a dirt road because Miranda had to relieve himself. Defendant and Palmer also got out of the car. Nelson was still under the influence, but was not hallucinating. He stayed in the car, and saw defendant shoot

3

Miranda, then Palmer hit Miranda in the face. Defendant walked up to Miranda, who was on the ground, and shot him again. Palmer reached toward Miranda with 'something in his hand' and then he and defendant got back in the car and drove off. Palmer counted out about $3500 and gave it to defendant; defendant gave Palmer $1000 and kept the rest. Palmer threw Miranda's wallet out of the car. As they drove back to San Jose, defendant gave a revolver to Palmer, who could not get the cartridges out because 'they were stuck.' Defendant said something about 'thinking he was going to have to stomp him to death when it didn't fire the second time.' Defendant said, 'see, it wasn't that hard. Like I said, all I needed you to do was grab the wallet. I just can't touch a dead guy.' Later, they went 'to Russ's place' where defendant gave 'Russ some money. Told him it was what he owed him.' Palmer still had the gun.

"On the morning of June 18, 2000, a man checking his orchard found Miranda on the ground, convulsing. A small knife was nearby. Nelson testified he had given this knife to Palmer.

"The next day, June 19, 2000, defendant paid his landlady $345 cash. Miranda died that day.

"Nelson was in custody by June 29, 2000, and cooperated with the police. Defendant was arrested that night in San Jose, and slept in the police car back to Stockton. Statements he made to the police were introduced at trial. The jury saw an obviously edited videotape of the interviews; they were instructed to be guided by redacted transcripts. His statement, after first denying knowing anything about the murder, was that Palmer shot Miranda and then gave the gun to defendant before later throwing it into the river." (*Webb*, *supra,* C043001, at pp. 2-4.)

B. *Legal Background*

Senate Bill 1437, which became effective on January 1, 2019, was enacted "to amend the felony-murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the

4

actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) The legislation accomplished this by amending sections 188 and 189 and adding section 1170.95 to the Penal Code.

Section 188, which defines malice, now provides in part: "Except as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).) Section 189, subdivision (e) now limits the circumstances under which a person may be convicted of felony murder: "A participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) [defining first degree murder] in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2."

Senate Bill 1437 also added section 1170.95, which allows those "convicted of felony murder or murder under a natural and probable consequences theory [to] file a petition with the court that sentenced the petitioner to have the petitioner's murder conviction vacated and to be resentenced on any remaining counts when all of the following conditions apply: [¶] (1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine. [¶] (2) The petitioner was convicted of first degree or second degree murder following a trial . . . . [¶] (3) The petitioner could not be convicted of first or second degree murder because of changes to [s]ection 188 or 189 made effective January 1, 2019." (§ 1170.95, subd. (a).)

5

As relevant here, once a complete petition is filed, "[t]he court shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section.  If the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner.  The prosecutor shall file and serve a response within 60 days of service of the petition and the petitioner may file and serve a reply within 30 days after the prosecutor response is served. . . .  If the petitioner makes a prima facie showing that he or she is entitled to relief, the court shall issue an order to show cause." (§ 1170.95, subd. (c).)

C. *Defendant's Petition for Resentencing*

On March 11, 2019, defendant filed a petition in propria persona requesting resentencing under section 1170.95.  Defendant did not use a form petition, instead averring in paragraph form that he had been charged and convicted of first degree murder under either felony murder or murder under the natural and probable consequences doctrine.  However, because of changes brought about by Senate Bill 1437 to sections 188 and 189, defendant could not now "be sentenced to Life Without the Possibility of Parole."  Defendant requested appointment of counsel, arguing such counsel was necessary because:  (1) he "was not the actual killer"; and (2) he "did not, with the intent to kill, aid, abet, counsel, command, induce, solicit, request, or assist the actual killer in the commission of murder in the First degree."  Further, defendant averred he was not a "major participant," nor did he "act with reckless indifference to human life during the course of the crime of or felony."  Finally, defendant averred the victim was not a police officer and "[a]lthough there has not been a prior determination by the court or jury that I was not a major participate [*sic*] or that I acted with reckless indifference to human life, [defendant] asserts that he is entitled to be resentenced in accord with § 1170(d)(2)."

Included with defendant's petition was a declaration wherein defendant swore that a jury had found him "guilty of murder of the First degree, P.C. 187, P.C. 190.2(a)(17)(A), and P.C. 211."  However, the jury had found him "NOT guilty of

6

intentionally and personally discharging a firearm with in [*sic*] the meaning of P.C. 12022.53."  Further, "the jury was instructed that they could fine [*sic*] Defendant guilty by either of 'Felony Murder' or the theory of 'Natural and Probable Consequences.' Because the recent statutory changes in P.C. 188 and P.C. 189, Defendant's conduct would not allow for a sentence under the former sentencing guidelines.  The changes in P.C. 188 and P.C. 189, in accord with P.C. 1170.95, make defendant eligible for relief from his current sentence."

On March 25, 2019, the trial court summarily denied defendant's request for the appointment of counsel.  On March 27, 2019, the trial court denied defendant's petition in an ex parte order incorporating its statement of decision.  This statement noted defendant's jury had been instructed with CALJIC No. 8.80.1, and as a result, the jury had already decided that defendant committed acts consistent with the changes brought about by Senate Bill 1437.  Accordingly, "[t]he jury's findings do not support a prima facie case for resentencing."  As such, defendant was ineligible for relief, and his petition denied.  Defendant timely appealed.

DISCUSSION

Defendant argues he is entitled to reversal and remand because:  (1) his petition complied with the statutory requirements for a prima facie showing, thus entitling him to appointment of counsel and a hearing on the merits of his petition before the trial court's denial and (2) the robbery-murder special circumstance does not preclude his eligibility because the definitions of "major participant" and "reckless indifference to human life" were clarified by our Supreme Court *after* the jury made that finding in *Banks, supra*, 61 Cal.4th 788 and *Clark, supra*, 63 Cal.4th 522.  Thus, the special circumstance findings from his trial are potentially invalid.  Relying on *People v. Torres* (2020) 46 Cal.App.5th 1168, review granted June 24, 2020, S262011 (*Torres*), defendant asserts *Banks* and *Clark* require further litigation of his case to determine his eligibility for relief.

7

The California Supreme Court recently decided a defendant filing a facially sufficient petition for relief under section 1170.95, subdivision (b) is entitled to the appointment of counsel (if requested) and briefing prior to the trial court's determination of whether the defendant has made a prima facie showing that he or she is entitled to relief under 1170.95, subdivision (c). (*People v. Lewis* (2021) 11 Cal.5th 952, 957.) Thus, it appears the trial court erred in summarily denying defendant's petition without appointing counsel and allowing the matter to be briefed in accordance with section 1170.95, subdivision (c).**3** (*Lewis,* at p. 957.)

We nonetheless, find any error in failing to appoint counsel and allow briefing was harmless under *People v. Watson* (1956) 46 Cal.2 818. (*Lewis, supra*, 11 Cal.5th at pp. 972-974.) There is no question that the trial court was entitled to review the record of conviction when making its section 1170.95 subdivision (c) determination. (*Lewis*, at pp. 970-971) A review of that record confirms defendant's jury was indeed instructed with CALJIC No. 8.80.1, which required the jury to make findings mirroring the current version of section 189, subdivision (e). (See CALJIC No. 8.80.1; § 189, subd. (e).) Given that special circumstance instruction and finding, there is nothing defendant's attorney could have said that would eliminate his ineligibility for relief as a matter of law. (See *Allison, supra*, 55 Cal.App.5th at p. 457, [felony-murder special circumstance (§ 190.2, subd. (a)(17)) and new requirements for felony murder (§ 189, subd. (e))

---

**3**    In reaching this conclusion, we are not deciding whether defendant's inclusion of information with his petition showing his inability to obtain relief should alter this analysis. Defendant's own declaration informed the court that he had been convicted of first degree murder, including the section 190.2, subdivision (a)(17)(A) enhancement, thus belying his asserted eligibility for relief. (See, e.g., *People v. Allison* (2020) 55 Cal.App.5th 449, 452-453 (*Allison*) [a defendant convicted of felony-murder special circumstance (§ 190.2, subd. (a)(17)) is ineligible for resentencing under § 1170.95].) We will assume for our purposes that the inclusion of such disqualifying information will not defeat an otherwise facially sufficient petition prior to the court's section 1170.95 subdivision (c) prima facie determination.

8

require the same findings, thus showing a defendant with a felony-murder special circumstance "could still be convicted of felony murder" precluding relief], review granted, italics omitted.) Therefore, even though the court acted improperly when it summarily denied defendant's petition without counsel and briefing, the disqualifying information would have been submitted with that briefing and would still properly disqualify defendant from relief as a matter of law.

Defendant argues he should be entitled to proceed with his section 1170.95 petition notwithstanding the felony-murder special circumstance because subsequent developments in the law have placed the continuing validity of those findings into question. The Attorney General disagrees, contending that *Torres* was wrongly decided and that the *Banks/Clark* clarifications of law do not alter the disqualifying effect of a felony-murder special circumstance finding. The People's position has been accepted by subsequent case developments following the submission of briefing in this case. (See *People v. Gomez* (2020) 52 Cal.App.5th 1, review granted Oct. 14, 2020, S264033; *People v. Galvan* (2020) 52 Cal.App.5th 1134, review granted Oct. 14, 2020, S264284 (*Galvan*); *People v. Murillo* (2020) 54 Cal.App.5th 160, review granted Nov. 18, 2020, S267978; but see *People v. York* (2020) 54 Cal.App.5th 250 (*York*), review granted Nov. 18, 2020, S264954 [following *Torres* and criticizing *Galvan*].)

The division between the Courts of Appeal on this issue has continued (see, e.g., *People v. Smith* (2020) 49 Cal.App.5th 85, review granted Jul. 22, 2020, S262835 (*Smith*) [enhancement not disqualifying]; *Allison, supra*, 55 Cal.App.5th 449, [enhancement disqualifying responding to *York, supra* 54 Cal.App.5th 250, review granted; *People v. Jones* (2020) 56 Cal.App.5th 474, review granted Jan. 27, 2021, S265854 [following *Allison*]; *People v. Nunez* (2020) 57 Cal.App.5th 78, review granted Jan. 13, 2021, S265918 [following *Allison*]) and is poised for decision by the California Supreme Court when it decides in *People v. Strong* (Dec. 18, 2020, C091162) [nonpub. opn.], review granted March 10, 2021, S266606, whether a felony-murder special circumstance finding

9

(§ 190.2, subd. (a)(17)) made before *Banks, supra,* 61 Cal.4th 788 and *Clark, supra,* 63 Cal.4th 522, preclude a defendant from making a prima facie showing of eligibility for relief under section 1170.95. (*Strong,* review granted Mar. 10, 2021, S266606.)

Until we receive further guidance from the California Supreme Court, we find *Galvan* and *Allison* more persuasive on this issue than the cases to the contrary.

Our Supreme Court's decisions in *Banks* and *Clark* clarified "what it means for an aiding and abetting defendant to be a 'major participant' in an underlying felony and to act with 'reckless indifference to human life,' [and] construed section 190.2, subdivision (d) in a significantly different, and narrower manner than courts had previously construed the statute." (*Torres*, *supra*, 46 Cal.App.5th at p. 1179, review granted; see also *Galvan*, *supra*, 52 Cal.App.5th at p. 1141, review granted.) In *Galvan*, the appellate court acknowledged these changes to section 190.2, subdivision (d) and considered whether a defendant could relitigate his special circumstance conviction using section 1170.95. (*Galvan*, at p. 1141.) There, as here, the defendant was convicted of first degree murder with a special circumstance finding under section 190.2, subdivision (a)(17) made before *Banks* and *Clark* were decided. (*Galvan,* at pp. 1138-1139.) On appeal, the defendant, like defendant here, argued that *Banks* and *Clark* had altered the meaning of "major participant" and "reckless indifference to human life" such that he was entitled to reconsideration of the conviction under section 1170.95. (*Galvan,* at p. 1137.)

The *Galvan* court first considered the relevant statutory language: "In order to be eligible for resentencing, a defendant must show that he or she 'could not be convicted of first or second degree murder *because of changes to Section[s] 188 or 189 made effective' as part of Senate Bill No. 1437.*" (*Galvan*, *supra*, 52 Cal.App.5th at p. 1142, italics added; § 1170.95, subd. (a)(3), italics added.) The court concluded that as to *Galvan* the requirement was not met, because "[a]lthough [the defendant] is asserting that he could not now be convicted of murder, the alleged inability to obtain such a conviction is not 'because of changes' made by Senate Bill No. 1437, but because of the clarification

10

of the requirements for the special circumstance finding in *Banks* and *Clark*. Nothing about those requirements changed as a result of Senate Bill No. 1437. Just as was the case before that law went into effect, the special circumstance applies to defendants who were major participants in an underlying felony and acted with reckless indifference to human life. If [the defendant] is entitled to relief based on *Banks* and *Clark*, the avenue for such relief is not section 1170.95, but a petition for writ of habeas corpus." (*Galvan*, at p. 1142.)

The *Galvan* court also observed that permitting defendants to relitigate a special circumstance finding by way of a section 1170.95 petition would "give [them] an enormous advantage over other similarly situated defendants based solely on the date of [their] conviction." (*Galvan*, *supra*, 52 Cal.App.5th at p. 1142, review granted.) "Defendants convicted after the Supreme Court issued its decisions in *Banks* and *Clark* would be required to challenge the sufficiency of the evidence of the special circumstance finding on direct appeal, where the People would need only to show that substantial evidence supported that finding." (*Id.* at pp. 1142-1143.) Defendants convicted before *Banks* and *Clark*, on the other hand, could challenge the special circumstance findings under section 1170.95, which would require the prosecution "to prove the special circumstance beyond a reasonable doubt." (*Galvan,* at p. 1143.) "[N]othing in the language of Senate Bill No. 1437 suggests that the Legislature intended unequal treatment of such similarly situated defendants." (*Ibid*.)

Defendant urges us to follow *Torres*, *supra*, 46 Cal.App.5th 1168, review granted, which also addressed the denial of a section 1170.95 petition based on the changes made by *Banks* and *Clark*. The *Torres* court concluded the summary denial of the defendant's petition based on the pre-*Banks*/*Clark* special circumstance finding raised the "possibility that [the defendant] was punished for conduct that is not prohibited by section 190.2 as currently understood, in violation of [the defendant's] constitutional right to due process" and, as relevant here, reversed and remanded. (*Torres,* at p. 1180.)

11

Torres had already sought habeas relief, claiming the special circumstance finding was no longer valid; his petition for relief had been denied. (*Torres*, *supra*, 46 Cal.App.5th at p. 1180, fn. 4, review granted.) The appellate court considered whether that habeas petition precluded the section 1170.95 petition, but did not opine on whether habeas relief was more appropriate in light of section 1170.95's statutory language. (*Torres*, at p. 1180.) Defendant further relies upon *Smith, supra*, 49 Cal.App.5th 85, review granted, which also did not discuss the appropriateness of a habeas first approach and which agreed with *Torres* that a special circumstance finding issued prior to *Banks* and *Clark*, and which was not affirmed by a court after *Banks* and *Clark*, would not establish a defendant's eligibility for resentencing under section 1170.95 as a matter of law. (*Smith*, at pp. 93-94.)

The propriety of requiring a defendant to first seek relief in a habeas petition was squarely addressed by the *Allison* court, which had asked the parties to address: "Whether the trial court properly relied on [the defendant's] admission of felony-murder special circumstances (§ 190.2, subd. (a)(17)) as the sole basis for finding that he had not made a prima facie showing that he was entitled to relief." (*Allison, supra*, 55 Cal.App.5th at p. 456.) The *Allison* court first emphasized that section 1170.95 requires a prima facie showing by petitioner that he " '*could not* be convicted of . . . murder because of changes to Section 188 or 189 made' in Senate Bill No. 1437." (*Allison,* at p. 456.) It noted that the requirements for a finding of felony murder under the newly amended version of section 189 were *identical* to the requirements of the felony-murder special circumstance that had been in effect at the time of the challenged murder conviction (in the *Allison* case, 1997; in this case, 2002). (*Allison*, at p. 456.) Thus, the special circumstance finding showed "as a matter of law that Allison *could* still be convicted of felony murder even under the newly amended version of section 189" and precluded a prima facie showing of eligibility. (*Id*. at p. 457.)

The *Allison* court disagreed with the argument to the contrary embraced by *York, supra*, 54 Cal.App.5th 250, review granted, that because no court had examined whether there was a factual basis for the special circumstance finding since *Banks* and *Clark* were decided, the finding was insufficient to show ineligibility as a matter of law. (*Allison, supra*, 55 Cal.App.5th at p. 457.) We agree with the *Allison* court that *Banks* and *Clark* did not change the law, but merely clarified the same principles that existed earlier. (See *Allison,* at p. 457; see also *In re Miller* (2017) 14 Cal.App.5th 960, 978.) As the *Allison* court noted, the pattern jury instructions remain the same; *Banks* and *Clark* merely resulted in the addition of *optional* language thereto. (*Allison, supra*, 55 Cal.App.5th at p. 457.)

We further observe that the language in section 1170.95, subdivision (d)(2) anticipates, rather than precludes, the possibility of habeas relief before a section 1170.95 petition because one way to obtain a "prior finding" that meets the subdivision's requirements is via a habeas petition. (*In re Ramirez* (2019) 32 Cal.App.5th 384, 406.) If a defendant has successfully obtained such relief, the trial court must provide the petitioner access to section 1170.95 relief. Nothing precludes relief under section 1170.95; the language simply presumes a petitioner will pursue alternative relief first.

Finally, we disagree that reliance on a special circumstance finding to determine that a defendant cannot make a prima facie case for resentencing as a matter of law requires the trial court to make "a separate determination concerning the validity of the special circumstance." (*York, supra*, 54 Cal.App.5th at p. 262, review granted.) Such reliance on the jury finding requires only a simple review of the record to determine whether the factfinder found the special circumstance to be true and what that finding entailed. Such a review of prior proceedings is fully contemplated by section 1170.95, subdivision (c). (*People v. Verdugo* (2020) 44 Cal.App.5th 320, 329-330, review granted Mar. 18, 2020, S260493.)

13

We find the *Allison* court's responses to *York* persuasive, and the analyses of *Allison* and *Galvan,* considered together, convince us that the appropriate avenue for defendant's challenge to the special circumstance allegations is through a petition of habeas corpus, rather than the section 1170.95 petition filed in this case.  (See *In re Miller, supra,* 14 Cal.App.5th at p. 979 [permitting habeas challenge to special circumstance conviction].)  Accordingly, the trial court did not err when it denied defendant's petition.

DISPOSITION

The trial court's order is affirmed.


_____\s\_____,
BLEASE, J.



We concur:



_____\s\_____,
RAYE, P. J.



_____\s\_____,
HULL, J.

14